Colin D. Dailey (SBN 293942)
*colin.dailey@bclplaw.com*
**BRYAN CAVE LEIGHTON PAISNER LLP**
120 Broadway, Suite 300
Santa Monica, California 90401-2386
Telephone: (310) 576-2128
Facsimile: (310) 576-2200

Daniel A. Crowe (*admitted pro hac vice*)
*dan.crowe@bclplaw.com*
**BRYAN CAVE LEIGHTON PAISNER LLP**
211 North Broadway, Suite 3600
St. Louis, MO 63102
Telephone: (314) 259-2619

Attorneys for Defendant and Counterclaimant Puff Corp.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Kandypens, Inc., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Puff Corp., a Delaware corporation,<br><br>Defendant.<br><br>Puff Corp., a Delaware corporation,<br><br>Counterclaimant,<br><br>vs.<br><br>Kandypens, Inc., a Delaware corporation,<br><br>Counterclaim-Defendant. | Case No. 2:20-cv-00358 GW (KSx)<br><br>**PUFF CORPORATION'S OPPOSITION TO KANDYPENS, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Filed concurrently with Declarations of Colin D. Dailey and Avi Bajpai; Statement of Genuine Disputes; Request for Evidentiary Ruling on Specified Objections]<br><br>**District Judge: Hon. George H. Wu**<br><br>Date:    October 7, 2021<br>Time:    8:30 a.m.<br>Place:   Courtroom 9D, 9th Floor<br>         United States Courthouse<br>         350 West 1ˢᵗ Street<br>         Los Angeles, CA, 90012<br><br>Action Filed:  January 13, 2020<br>Trial Date:  December 14, 2021 |

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

603566685

## CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   THE COURT SHOULD DENY SUMMARY JUDGMENT FOR KANDYPENS ON INVALIDITY ................................................................ 3

    A.    Kandypens' "Public Use" Theory Fails as a Matter of Law. ................ 3

        1.    Kandypens Fails to Meet its Burden to Show the Pepcom Prototypes Had Every Limitation of the Asserted Claims. ......... 4

        2.    Kandypens Lacks Evidence Showing the Pepcom Activities Constitute "Public Use." ................................................................... 7

    B.    Kandypens Cannot Meet its Burden of Proof to Show the '334 Patent is Invalid as Anticipated by Prior Publications. ................ 10

        1.    Kandypens' Theory of "Express" Anticipation Fails. ................. 11

        2.    Kandypens' Theory of "Inherent" Anticipation Fails. .............. 13

        3.    Kandypens Theory of "Implied" Anticipation Fails. ................ 14

    C.    Kandypens' Alternative Theory of Obviousness Fails. ........................ 17

        1.    The Scope and Content of the Prior Art. .................................... 18

        2.    The Differences Between the Claims and the Prior Art. ............ 19

        3.    The Level of Skill in the Pertinent Art. ..................................... 20

        4.    Objective Indicia of Non-obviousness. ...................................... 20

        5.    Consideration of All Factors Demonstrates the Non-Obviousness of the Claims of the '344 Patent............................ 23

III.  THE COURT SHOULD DENY SUMMARY JUDGMENT FOR KANDYPENS ON INFRINGEMENT ......................................................... 24

IV.  CONCLUSION ................................................................................................. 25

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*3M Unitek Corp. v. Ormco Co.*,
   96 F.Supp.2d 1042 (C.D. Cal. 2000) ................................................................. 11

*Adenta GmbH v. OrthoArm, Inc.*,
   501 F.3d 1364 (Fed. Cir. 2007) ........................................................................ 7

*Akzo N.V. v. U.S. Int'l Trade Comm'n*,
   808 F.2d 1471 (Fed. Cir. 1986) ...................................................................... 14

*Al-Site Corp. v. VSI Int'l, Inc.*,
   174 F.3d 1308 (Fed. Cir. 1999) ...................................................................... 12

*Apple Inc. v. Samsung Electronics Co.*,
   839 F.3d 1034 (Fed. Cir. 2016) ...................................................................... 21

*ArcelorMittal France v. AK Steel Corp*,
   700 F.3d 1314 (Fed. Cir. 2012) ...................................................................... 15

*ArcelorMittal France v. AK Steel Corp.*,
   811 F. Supp. 2d 960 (2011) ............................................................................ 15

*Barry v. Medtronic, Inc.*,
   914 F.3d 1310 (Fed. Cir. 2019) ........................................................................ 7

*BASF Corp. v. SNF Holding Co.*,
   955 F.3d 958 (Fed. Cir. 2020) ..................................................................... 3, 7

*Baxalta Inc. v. Genetech, Inc.*,
   972 F.3d 1341 (Fed. Cir. 2020) ...................................................................... 25

*Blue Calypso, LLC v. Groupon, Inc.*,
   815 F.3d 1331 (Fed. Cir. 2016) ...................................................................... 15

*c.f. Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
   329 F.Supp.3d 1070 (N.D. Cal. 2018) ...................................................... 14, 15

*Cont'l Can Co. USA v. Monsanto Co.*,
   948 F.2d 1264 (Fed. Cir 1991) ...................................................................... 13

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

*Dayco Products, Inc. v. Total Containment, Inc.*,
    329 F.3d 1358 (Fed. Cir. 2003) ..............................................................13, 15, 16

*Dey, L.P. v. Sunovion Pharms., Inc.*,
    715 F.3d 1351 (Fed. Cir. 2012) ..............................................................3, 7, 9, 10

*Diodem, LLC v. Lumenis Inc.*,
    2005 WL 6225366 (C.D. Cal. Jan. 24, 2005).........................................10, 13, 14

*Ecolochem, Inc. v. Southern California Edison Co.*,
    863 F. Supp. 1165 (C.D. Cal. 1994) ........................................................... 14

*Fox Factory Inc. v. SRAM LLC*,
    944 F.3d 1366 (Fed. Cir. 2019) ..............................................................22, 23

*Gechter v. Davidson*,
    116 F.3d 1454 (Fed. Cir. 1997) ................................................................. 11

*In re Gordon*,
    733 F.2d 900 (Fed. Cir. 1984) ................................................................. 19

*Graham v. John Deere Co.*,
    383 U.S. 1 (1966) ....................................................................2, 16, 17, 23

*Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*,
    139 S. Ct. 628 (2019)............................................................................ 9

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*,
    909 F.2d 1464 (Fed. Cir. 1990) ................................................................. 12

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
    640 Fed.Appx. 951 (Fed. Cir. 2016) ........................................................... 13

*Intercont'l Great Brands LLC v. Kellogg N Am. Co.*,
    869 F.3d 1336 (Fed. Cir. 2017) ................................................................. 17

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
    424 F.3d 1374 (Fed. Cir. 2005) ..............................................................8, 9

*J.T. Eaton & Co. v. Atl. Paste & Glue Co.*,
    106 F.3d 1563 (Fed. Cir. 1997) ................................................................. 22

*Janssen Pharmaceutica, N.V. v. Eon Labs Mfg., Inc.*,
    134 Fed. Appx. 425 (Fed. Cir. 2005) ........................................................... 9

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

*Kennametal, Inc. v. Ingersoll Cutting Tool Co.*,
   780 F.3d 1376 (Fed. Cir. 2015) ............................................................. 15

*In re King*,
   801 F.2d 1324 (Fed. Cir. 1986) ............................................................. 14

*Koito Mfg. Co. v. Turn-Key-Tech, LLC*,
   381 F.3d 1142 (Fed. Cir. 2004) ............................................................. 10

*Lacks Indus. v. McKechnie Vehicle Components USA, Inc.*,
   300 F. App'x 904 (Fed. Cir. 2008) ........................................................ 14

*Meiresonne v. Google, Inc.*,
   849 F.3d 1379 (Fed. Cir. 2017) ............................................................. 17

*Metabolite Laboratories, Inc. v. Laboratory Corp. of Am. Holdings*,
   370 F.3d 1354 (Fed. Cir. 2004) ............................................................. 12

*Microsoft Corp. v. i4i Ltd. P'ship*,
   564 U.S. 91 (2011) ................................................................................ 17

*Minnesota Min. and Mfg Co. v. Chemque, Inc.*,
   303 F.3d 1294 (Fed. Cir. 2002) ............................................................... 8

*Mintz v. Dietz & Watson, Inc.*,
   679 F.3d 1372 (Fed. Cir. 2012) ............................................................. 21

*Moleculon Research Corp. v. CBS, Inc.*,
   793 F.2d 1261 (Fed. Cir. 1986) ............................................................... 9

*Motionless Keyboard Co. v. Microsoft Corp.*,
   486 F.3d 1376 (Fed. Cir. 2007) ........................................................... 3, 8

*Move, Inc. v. Real Estate All. Ltd.*,
   221 F.Supp.3d 1149 (C.D. Cal. 2016) .................................................... 14

*Otsuka Pharm. Co. v. Sandoz, Inc.*,
   678 F.3d 1280 (Fed. Cir. 2012) ............................................................. 21

*Pentec, Inc. v. Graphic Controls Corp.*,
   776 F.2d 309 (Fed. Cir. 1985) ............................................................... 20

*In re Preda*,
   401 F.2d 825 (C.C.P.A. 1968) ............................................................... 15

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

*Riverwood Int'l Corp. v. Mead Corp.*,
    212 F.3d 1365 (Fed. Cir. 2000) .......................................................................... 17

*Rolls-Royce Ltd. V. GTE Valeron Corp.*,
    800 F.2d 1101 (Fed. Cir. 1986) .......................................................................... 12

*Sinskey v. Pharmacia Ophthalmics Inc.*,
    982 F.2d 494 (Fed. Cir. 1992) ............................................................................ 7

*Standard Havens Products, Inc. v. Gencor Indust., Inc.*,
    953 F.2d 1360 (Fed. Cir. 1991) .......................................................................... 14

*Stratoflex Inc. v. Aeroquip Corp.*,
    713 F.2d 1530 (Fed. Cir. 1982) .......................................................................... 20

*Tec Air, Inc. v. Denso Mfg. Mich. Inc.*,
    192 F.3d 1353 (Fed. Cir. 1999) .......................................................................... 22

*Tegal Corp. v. Tokyo Electron Am., Inc.*,
    257 F.3d 1331 (Fed. Cir. 2001) .......................................................................... 10

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002) ............................................................................ 2

*TF3 Ltd. v. Tre Milano, LLC*,
    894 F.3d 1366 (Fed. Cir. 2018) .......................................................................... 11

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    593 F.3d 1325 (Fed. Cir. 2010) .......................................................................... 10

*W.L. Gore Assoc., Inc. v. Garlock*,
    721 F.2d 1540 (Fed. Cir. 1983) .......................................................................... 10

*WBIP, LLC v. Kohler Co.*,
    829 F.3d 1317 (Fed. Cir. 2016) .................................................................... 21, 22

**Statutes**

35 U.S.C. § 102 ................................................................................................... 11

35 U.S.C. § 282 ..................................................................................................... 2

**Other Authorities**

37 CFR 1.56 ........................................................................................................ 12

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

v

1

L.R. 5-4.3.3 ............................................................................................................ 11

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

PUFF CORPORATION'S OPPOSITION TO KANDYPENS, INC.'S MOTION FOR SUMMARY JUDGMENT

# I.    **INTRODUCTION**

Plaintiff Kandypens, Inc. ("Kandypens") has moved for summary judgment on its claim that Defendant Puff Corp.'s ("Puffco") U.S. Patent No. 10,517,334 ("the '334 Patent") is invalid due to public use, anticipation based on printed publications, and obviousness.  Kandypens' core theory is that Puffco's inventor publicly used prototypes allegedly embodying the claimed invention at a Pepcom event in Las Vegas ("Pepcom Prototypes") in January 2018 a few days before the critical date.  However, the patent is presumed valid, and to invalidate it Kandypens must show by "clear and convincing evidence" the alleged prior art included each and every limitation of the asserted claims of the '334 Patent.  This is a highly factual inquiry, and Kandypens cannot meet its high burden at trial let alone on a summary judgment motion.

Kandypens cannot meet its high burden on its public use theory because the available evidence shows Puffco did not have a final product to take to Pepcom.  Rather, it took two prototypes that were specially created for Pepcom and were designed differently than the claimed invention in the '334 Patent by including hardwired atomizers to avoid electrical connectivity issues at a trade show.  Kandypens also puts forth no evidence the prototypes contained at least three additional claim limitations related to the never-seen-before atomizer internal flow path.  Further, Kandypens fails to establish the prototypes were ever in "public use."  There is no evidence any member of the public actually used the device, the only demonstrations occurred in a small gathering of less than ten individuals in a private room with an understanding of confidentiality, there is no evidence about who these individuals are or whether they possessed the requisite skill to understand the invention, Mr. Volodarsky never relinquished control of the device, and the key claimed features of the invention were never disclosed.  Thus, Kandypens cannot meet its high burden on public use.

Second, Kandypens cannot meet its high burden on its alternative theories of

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

PUFF CORPORATION'S OPPOSITION TO KANDYPENS, INC.'S MOTION FOR SUMMARY JUDGMENT

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

"implied" or "inherent" anticipation because Kandypens concedes the prior art references do not disclose numerous limitations of the asserted claims, and Kandypens also admits the Peak and numerous other vaporizers can operate without a removable atomizer, which is fatal to its anticipation argument.  Further, all of the information in the prior art references, and more, was before the PTO examiner who allowed the claims, creating an even "heavier burden to prove invalidity."

Third, Kandypens cannot meet its high burden on obviousness.  Kandypens' obviousness argument is notably deficient for its failure to provide the Court with any evidence or analysis on the *Graham* factors ("the 'background' for evaluating obviousness"), and for its reliance on the purported expert testimony of its CEO who admitted he had never seen this type of atomizer technology before he decided to copy it and who had to ask others "how does the technology work?"  Puffco has established that an analysis of the *Graham* factors supports a finding of non-obviousness as a matter of law.  Further, Kandypens itself cites numerous articles hailing the groundbreaking nature of the new invention.  Thus, Kandypens lacks evidence to meet its high burden on public use, anticipation, and obviousness, and the Court should deny the motion.

Kandypens also moves for summary judgment that its accused Oura device does not infringe the '334 Patent. The only claim element Kandypens contends the Oura does not have are the "second container outlets" as used in the claim phrase "one or more second container outlets capable of flowing the gas having the vaporizable product entrained therein into atomizer internal flow path."  However, all evidence shows the Oura has such openings.  Puffco's expert Mr. Meyst analyzed the Oura device, compared it to the asserted claims in the '334 Patent, and determined it has "second container outlets" as that term has been construed by the Court and as recited in the '334 Patent's claims and described in the specification, preferred embodiments, and drawings.  Kandypens' CEO and its expert, Dr. Colwell, likewise testified the Oura has second container outlets.  Thus, the Court

1    should deny Kandypens' motion and grant Puffco's motion for summary judgment.

2    **II.    THE COURT SHOULD DENY SUMMARY JUDGMENT FOR**

3    **KANDYPENS ON INVALIDITY.**

4    An issued patent is presumed valid.  35 U.S.C. § 282.  Overcoming this

5    presumption requires clear and convincing evidence.  *Microsoft Corp. v. I4I Ltd.*

6    *P'ship*, 564 U.S. 91, 95 (2011).  Summary judgment of patent invalidity requires all

7    reasonable factual inferences are resolved in favor of the non-movant.  *Teleflex, Inc.*

8    *v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002) (citing omitted).

9    Here, not only does Kandypens lack evidence to meet its high burden, all available

10   evidence overwhelmingly and directly contradicts Kandypens' claim.

11   **A.    Kandypens' "Public Use" Theory Fails as a Matter of Law.**

12   Kandypens' core invalidity theory is the invention claimed in the '334 Patent

13   was in public use at the January 2018 Pepcom event more than one year before the

14   application filing date.  (Motion, Section III.B.i.)   However, to prevail on its public

15   use theory, Kandypens "must show that [1] an embodiment of the patented

16   invention was [2] in public use as defined by the statute before critical date."

17   *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1383 (Fed. Cir. 2007).

18   Both requirements are intensely factual and generally properly decided by the

19   jury.  *BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 967 (Fed. Cir. 2020) (genuine

20   issues of material fact prevented entry of summary judgment on public use defense

21   as factfinder was entitled to hear evidence and make reasonable inferences regarding

22   alleged activities); *Dey, L.P. v. Sunovion Pharms., Inc*., 715 F.3d 1351, 1357 (Fed.

23   Cir. 2012) ("The 'public use' inquiry is replete with factual considerations").

24   Here, Kandypens fails to make either showing, and the evidence shows the

25   opposite: (1) the Pepcom Prototypes did not contain each limitation of the claimed

26   invention, and (2) the Pepcom activities do not constitute "public use."

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

**1.**     **Kandypens Fails to Meet its Burden to Show the Pepcom Prototypes Had Every Limitation of the Asserted Claims.**

Kandypens argues "[t]here is no genuine dispute that Puffco publically used and displayed the Peak at the Pepcom event..." (Mot., 14:24-26, emphasis added.) This theory fails for several reasons.

First, it is undisputed that Puffco specially created two prototypes to take to Pepcom. (Puffco Statement of Genuine Disputes ["SGD"], 34.)

Second, all available evidence shows the Pepcom Prototypes likely lacked at least one required claim element, a removable atomizer. (SGD, 85-93.)  Each Puffco employee who was deposed, including the employees with personal knowledge of the Pepcom event and Pepcom Prototypes, testified that the Pepcom Prototypes likely did not have a removable atomizer. (SGD 91.)  For example, when Kandypens asked Mr. Volodarsky, "Did the prototypes that you brought with you to Pepcom differ in any way from Exhibit 2 [current Peak] in front of you?", Mr. Volodarsky answered: "Most definitely. … The atomizer was likely hardwired. …." (*Id.*)  When Kandypens asked Mr. Bajpai "Do you believe that to be the case, that you hardwired the connection for CES -- or sorry -- for Pepcom?" he replied: "… I would say that it's possible, if not likely." (*Id.*)  Mr. Bajpai explained "When you're doing a demo, you remove all risk so that that demo goes smoothly." (*Id.*) When Kandypens asked Mr. Sayre "Were the prototypes taken to Pepcom mature prototypes?", he responded "I think that they had connectivity issues, and I think that I hardwired those atomizers." (*Id.*)  When Kandypens asked "Why do you think that?", Mr. Sayre responded: "Because that's what was going on at the time, and I was doing that for countless prototypes. … We were experiencing connectivity issues up until launch and after launch." (*Id.*)

Documents produced by Puffco also show Puffco likely hardwired the atomizer in place for the Pepcom event. (SGD 93.)  For example, Ex. 24 is a Puffco design document in late 2017 stating "Critical:  Engineering has discovered a

connection issue with the Atomizer Housing ….." (*Id*.)  Exhibit 6 is an internal Puffco email chain just days before Pepcom stating Puffco did not have a "final" product to take to Pepcom, and anyone at Pepcom only would be able to see the prototype, not use it.  (*Id*.)

Kandypens has failed to put forth any evidence that the Pepcom Prototypes contained a removable atomizer.  Instead, Kandypens relies on its CEO's (Mr. Gibson) speculation that it is "implausible" that the Pepcom Prototypes were anything but identical to the Peak devices eventually sold to customers.  However, Mr. Gibson confirmed he was not in Las Vegas, and only Puffco employees would know if the atomizer was hardwired.  (SGD 89.)  He also acknowledged none of the videos, images, and articles referenced in Kandypens' invalidity contentions show a removable atomizer.  (SGD 85.)  Regardless, Kandypens cannot meet its burden based on probabilities or speculation.  As discussed above, the evidence shows Puffco did not have a "final" product to take to Pepcom, the device was not on sale until at least *after* the critical date, Puffco was not accepting email addresses of interested customers until at least *after* the critical date, Puffco employees were addressing the connectivity issues up to and after launch, and Puffco did not begin selling the device to consumers until more than a month after the event.  (SGD 34, 53-54, 91-93.)  Any question as to the "plausibility" of the evidence or the credibility of Puffco's witnesses is properly decided by the jury.

Thus, all available evidence shows Puffco likely hardwired the atomizers in the prototypes brought to Pepcom, and Kandypens lacks evidence to the contrary to meet its burden.

Recognizing it lacks the required evidence for its claim, Kandypens retained Dr. Colwell to provide the narrow opinion that an atomizer that is soldered to the printed circuit board (PCB) is "removably attachable" because "the solder can be cut to remove the atomizer and the wires re-soldered to reattach the atomizer" using a soldering iron and solder.   (Mot., at 16.)  This argument fails, and the Court

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

should exclude Dr. Colwell's unreliable opinion for the reasons stated in Puffco's separately-filed motion to strike.  (Doc. 127)  First, Dr. Colwell's soldering experiment is irrelevant and unreliable because he failed to apply the facts of the case as to how Puffco actually hard-wired the atomizers in the prototypes, and he removed a critical component of the device (the atomizer threading) making the device inoperable for its intended use.  (SGD 43; Doc. 127.)  Second, Dr. Colwell's experiment does not meet the Court's claim construction of "removably attachable" because the atomizer was never actually reattached to the base but instead was still detached and dangling off the side of the arm.  (*Id*.)  Nor was the atomizer an "identical piece" after Dr. Colwell added, removed, and added solder to it.  (*Id*.)  Third, Dr. Colwell's opinion is inconsistent with the Court and parties' understanding the claim construction involves a removal mechanism the Court described as "not that complicated."  (*Id*.)  Dr. Colwell's soldering mechanism is complicated – the atomizers cannot be removed without using a soldering iron to melt solder away from two wires on the atomizer electrode, and they cannot be reattached without using soldering iron to melt solder back onto the wires and atomizer electrode connecting them together.  (*Id*.)  Dr. Colwell's soldering experiment requires specialty tools (soldering iron) and material (solder), which are not sold with the Peak, and which require specialized skill to operate.  (*Id*.)  Dr. Colwell's experiment is flawed, fails to apply the facts of the case, and is contrary to the claim construction.

Kandypens also fails to offer evidence showing the Pepcom Prototype atomizers contained additional claim limitations.  (SGD 37.)  Specifically, Kandypens offers no evidence the prototypes contained (1) "an atomizer housing comprising one or more atomizer housing walls that at least partially define an atomizer internal flow path therein," (2) "second container outlets capable of flowing the gas having the vaporizable product entrained therein into [the] atomizer internal flow path," and (3) "one or more atomizer outlets capable of receiving the

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1    flow of gas from the atomizer internal flow path, and providing the flow of gas to

2    the conduit inlet of the base" (collectively, the "Atomizer Air Flow Path

3    Limitations").  Kandypens bears the burden of demonstrating – with clear and

4    convincing evidence – that the Pepcom Prototypes included each of these claim

5    elements.  Yet, Kandypens offers no evidence on any of these limitations other than

6    the speculation of its CEO, who has never designed an atomizer and who admitted

7    he lacks personal knowledge of the design of the prototypes and that the atomizer in

8    the Pepcom Prototypes "could be anything" and that "[n]obody has any idea what's

9    in there except for the Puffco employees."  (SGD 89.)

10       Kandypens attempts to shift its burden by arguing that Puffco's discovery

11   responses and deposition testimony "never rises above the level of speculation" and

12   that Puffco does not know for certain whether the Pepcom Prototypes contained

13   hardwired atomizers.  (Mot. at 16.)  But this misses the point -- it is Kandypens'

14   burden to prove invalidity, not Puffco's burden to disprove it.  As Kandypens points

15   out, there is no clear and convincing evidence showing the Pepcom Prototypes had a

16   removably attachable atomizer, and all available evidence is that they did not.

17   (SGD 85-93.)  Kandypens misunderstands the burden of proof on this issue, and its

18   admissions here conclusively show it cannot meet its burden now or at trial and

19   doom its claim.

20       **2.   Kandypens Lacks Evidence Showing the Pepcom Activities**

21            **Constitute "Public Use."**

22       Kandypens makes the conclusory argument that just because Puffco took a

23   prototype to a trade show that must necessarily constitute "public use" under the

24   law.  However, evaluation of an alleged pre-critical date public use is based on the

25   totality of the circumstances.  *Sinskey v. Pharmacia Ophthalmics Inc.*, 982 F.2d 494,

26   498 (Fed. Cir. 1992).  Relevant factors regarding an allegation of public use include

27   (1) the nature of the activity that occurred in public, (2) public access to and

28   knowledge of the public use, (3) the existence of an implied obligation of

603566685                                    7

confidentiality, and (4) the skill and knowledge of the observers. *BASF Corp.*, 955 F.3d at 967. Further, public use is a highly factual inquiry that is generally appropriate for the jury. *Id.* (factfinder was entitled to hear evidence and make reasonable inferences regarding alleged activities); *Dey*, 715 F.3d at 1357 ("The 'public use' inquiry is replete with factual considerations"); *Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1327 (Fed. Cir. 2019) (factfinder is entitled to make reasonable inferences about public accessibility and confidentiality). Indeed, Kandypens relies heavily on *Adenta GmbH v. OrthoArm, Inc.,* 501 F.3d 1364 (Fed. Cir. 2007) for its public use argument, but that case was decided by the jury not via summary judgment (and, unlike here, it was undisputed that the device taken to the trade show in that case contained all limitations of the asserted claims).

Kandypens claims two alleged incidents of public use. First, Kandypens alleges an Engadget reporter filmed himself "using" a Pepcom Prototype on the floor of the Pepcom event. (Mot. at 7.) The video itself is not in evidence and therefore it cannot be determined as a matter of law that its contents show public use. However, a witness who watched the video and who has personal knowledge of how the Peak operates testified that the prototype displayed in the video was not actually used by the reporter. (SGD 46.) Kandypens has no evidence to the contrary. (*Id.*) Without such use, it is not public use. *Motionless Keyboard*, 486 F.3d at 1385 (reversing summary judgment of invalidity under public use bar because the patented product was not used in public for its intended purpose and was only visually displayed to others); *see also Minnesota Min. and Mfg Co. v. Chemque, Inc.*, 303 F.3d 1294, 1307 (Fed. Cir. 2002) (reversing jury finding of public use as there was insufficient evidence the product was actually used in public). At minimum, there are material facts in dispute as to this incident.

Second, Kandypens cites to an alleged demonstration of the Pepcom Prototypes by Mr. Volodarsky in a private room at the Mirage hotel after the Pepcom event. Applying the case law factors above, Kandypens fails to meet its

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1  evidentiary burden to prove this demonstration constitutes public use as a matter of

2  law.  None of the journalists have testified in this case.  (SGD 94.)  The record

3  before this Court does not include any information about the educational or work

4  background or experience of these journalists.  (*Id*.)  Therefore, there is no evidence

5  to assume they possessed the requisite skill to understand the invention.

6        Further, "an agreement of confidentiality, or circumstances creating a similar

7  expectation of secrecy, may negate a 'public use' where there is not commercial

8  exploitation."  *Invitrogen Corp. v. Biocrest Mfg., L.P.,* 424 F.3d 1374, 1382 (Fed.

9  Cir. 2005).  "[T]o qualify as 'public,' a use must occur without any 'limitation or

10 restriction, or injunction of secrecy.'" *Id.*, at 1381 (citation omitted).  Here, the

11 demonstrations did not occur in public but in a private hotel room setting where

12 there existed an implied expectation of confidentiality.  (SGD 48.)  When Mr.

13 Volodarsky was asked whether he expected confidentiality regarding the

14 demonstrations in the Mirage Hotel, he responded "[m]ost definitely" regarding "I

15 mean, typically, everything we were discussing there at the time, yeah."  (SGD 48.)

16 There is no evidence Mr. Volodarsky ever relinquished control of the prototypes

17 during these "one-on-one" demonstrations, and the evidence cited by Kandypens

18 reflects Mr. Volodarsky remained in the room the entire time.  (SGD 47-48.)  There

19 is no evidence anyone besides Mr. Volodarsky (the inventor) used the device.  (SGD

20 47.)  In addition, it is undisputed the commercial Peak was not offered for sale until

21 after the critical date (SGD 53-54), and therefore there was no commercial

22 exploitation before the critical date.  *Invitrogen*, 424 F.3d at 1380 (no commercial

23 exploitation where the inventor "neither sold nor offered for sale the claimed

24 process or any product derived from the process…").  For the same reason, *Helsinn*

25 *Healthcare S.A. v. Teva Pharms. USA, Inc.*, 139 S. Ct. 628 (2019) (discussion of "on

26 sale" bar) is inapposite.  Thus, Mr. Volodarsky's demonstrations in the Mirage hotel

27 room do no amount to public use.  *See also Moleculon Research Corp. v. CBS, Inc.*,

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

793 F.2d 1261, 1265-67 (Fed. Cir. 1986) (inventor's demonstrations to friends and colleagues over the course of many years were not public).

In addition, there is no evidence that any member of the public in either incident had access to the internal configuration of the atomizer, including its unique gas flow path.  (SGD 47.)  This is further grounds for rejecting Kandypens' public use argument.  *See Janssen Pharmaceutica, N.V. v. Eon Labs Mfg., Inc.*, 134 Fed. Appx. 425, 431 (Fed. Cir. 2005) (affirming district court decision finding no public use where composition of product involved in clinical trials "was never released to the doctors or the subjects of the trials, this fact weighs in favor of a finding that the use was not public."); *Dey*, 715 F.3d at 1356 (reversing summary judgment of public use noting that "when disclosure is limited to a small number of uninformed observers there may be no reason to believe 'that a viewer . . . could thereby learn anything of [the later-patented invention]" and disclose the invention to others.  In such cases, a finder of fact might reasonably conclude that the third party's use remained confidential and that the invention was not 'accessible to the public.'" (*Id.*, citing *W.L. Gore*, 721 F.2d at 1549.)  Here, as in *Dey*, "a reasonable jury could conclude that if members of the public are not informed of, and cannot readily discern, the claimed features of the invention in the allegedly invalidating prior art, the public has not been put in possession of those features. *Dey*, 715 F.3d at 1359.

On the record before the Court, there is a lack of clear and convincing evidence regarding these two incidents to decide as a matter of law that the prototypes included each and every limitation of claims 1-11 and 13 of the '334 Patent and were in "public use" pursuant to the case law factors discussed above.

**B.   Kandypens Cannot Meet its Burden of Proof to Show the '334 Patent is Invalid as Anticipated by Prior Publications.**

Recognizing it lacks the required evidence to prevail on its public use theory, Kandypens asserts the alternative invalidity theories of "express," "inherent," or "implied" anticipation based on five alleged prior art references in the form of

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1  printed publications. (Section III.B.ii.) "What a prior art reference discloses in an
2  anticipation analysis is a factual determination…." *Tegal Corp. v. Tokyo Electron*
3  *Am., Inc.*, 257 F.3d 1331, 1345–46 (Fed. Cir. 2001).  Here, the evidence shows
4  Kandypens cannot prevail on any of these theories, either.

### 1. Kandypens' Theory of "Express" Anticipation Fails.

6      In order to prevail on its theory of express anticipation, Kandypens must show
7  by clear and convincing evidence that a single prior art reference disclosed every
8  claim limitation arranged or combined in the same way as recited in the patent
9  claim.  *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332-33 (Fed.
10  Cir. 2010).  Establishing invalidity by anticipation is "an especially heavy burden"
11  for the accused infringer.  *Diodem, LLC v. Lumenis Inc.*, 2005 WL 6225366 (C.D.
12  Cal. Jan. 24, 2005) (citing *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142,
13  1151 (Fed. Cir. 2004)).  Indeed, to establish anticipation under 35 U.S.C. § 102,
14  "every limitation of a claim must <u>identically appear</u> in a single prior art reference for
15  it to anticipate the claim." *Id.* (emphasis in original) (citing *Gechter v. Davidson*,
16  116 F.3d 1454, 1457 (Fed. Cir. 1997)); *see also 3M Unitek Corp. v. Ormco Co.*, 96
17  F.Supp.2d 1042 (C.D. Cal. 2000); *TF3 Ltd. v. Tre Milano, LLC*, 894 F.3d 1366
18  (Fed. Cir. 2018) ("[T]he identical invention must be shown in as complete detail as
19  contained in the patent claim.").

20      Kandypens identifies five printed publications supporting its anticipation
21  theories, identified as references (a) through (e):

22      (a) A video published by Puffco on YouTube on January 8, 2018;

23      (b) A video published by Puffco on YouTube on January 12, 2018;

24      (c) A video published by Engadget on January 8, 2018;

25      (d) An article published by Andrew Tarantola of Engadget on January 9,
26          2018, which contains still images from the video in reference (c); and

27      (e) An article published by Brian Koerber of Mashable on January 8, 2018.
28  (SGD 83.)  Kandypens' showing fails for several reasons.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1    First, as a threshold issue, none of the videos are before the Court.

2  Kandypens' merely attaches stills or provides hyperlinks to websites.  (SGD 83.)

3  Hyperlinks to websites are not part of the record.  L.R. 5-4.3.3 ("Neither a

4  hyperlink, nor any site to which it refers, shall be considered part of the record…")

5  Thus, it cannot be decided as a matter of law from the record put forth by

6  Kandypens that any of these alleged prior art references embody each and every

7  element of the '334 Patent.

8    Second, the face of the '334 Patent and the Information Disclosure Statement

9  ("IDS") signed by the examiner show Puffco submitted all of this information and

10  more to the Patent Office, who fully considered its relevance before allowing the

11  claims.  (SGD 50-52, 63-64, 83.)  The '334 Patent and IDS list the videos and article

12  in references (a), (b), and (e) among the publications considered by the examiner.

13  (SGD 50-52.)  The examiner also considered an Engadget article dated March 16,

14  2018 that discussed Puffco taking the prototype to Pepcom, and which contained a

15  discussion of and hyperlink to reference (d).  (SGD 63-64.)  The March 16 article

16  also discussed and included a hyperlink to the January 11, 2018 Engadget article by

17  Chris Ip (exhibit 7 in this case) discussing Mr. Volodarsky's demonstrations in the

18  Mirage hotel room.  (*Id*.)  Puffco submitted numerous additional publications that

19  disclosed more of the prototypes, and references (a)-(e) do not add anything to what

20  was already considered by the examiner.  (SGD 63-64.)  Puffco was not required to

21  provide "cumulative" prior art references.  37 CFR 1.56 ("information is material to

22  patentability when it is not cumulative to information already of record or being

23  made of record in the application…"); *Rolls-Royce Ltd. V. GTE Valeron Corp*., 800

24  F.2d 1101, 1106 (Fed. Cir. 1986) (affirming district court decision finding

25  references were cumulative because they disclosed substantially the same device

26  and have the same relative lack of materiality).

27    Where, as here, the PTO considered some or all of the alleged prior art

28  references, "[the accused infringer] bears an even heavier burden to prove

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

invalidity." *Metabolite Laboratories, Inc. v. Laboratory Corp. of Am. Holdings*, 370 F.3d 1354, 1367-68 (Fed. Cir. 2004) ("the patent's second page cites [the prior art] as a reference"), citing *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1467 (Fed. Cir. 1990) ("This burden is especially difficult when the prior art was before the PTO examiner during prosecution of the application"). Patent examiners are presumed to do their job correctly and to know what claims they are allowing. *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999).

Third, Kandypens fails to demonstrate with clear and convincing evidence that each of these five publications disclose *all* limitations of claims 1-11 and 13 of the '334 Patent.  Kandypens' only evidence is the testimony of its CEO, Mr. Gibson. (Mot., *generally*.)  Mr. Gibson testified that references (a)-(e) do not disclose a removable atomizer and other claim limitations such as the internal air flow path of the atomizer or the atomizer outlets.  (SGD 85-86.)  Mr. Gibson's declaration, again, admits these five publications do not expressly disclose numerous claim limitations. (Gibson Decl., ¶¶ 20-23, 25, 26, 28, 30, 33-37, 40, 43, and 44.)  Kandypens' motion even concedes "the printed publications do not expressly depict, for example, a 'removably attachable atomizer' or an inner 'gas flow conduit,'…"  (Mot., at 19:23-24.)  Further, Mr. Gibson is not one skilled in the art, and he fails to provide any detailed analysis of how each claim element is disclosed in the prior art reference. (SGD 109; *see also* Gibson Decl., *generally*.)  Thus, his testimony alone is insufficient to meet Kandypens' burden.  *Dayco Products, Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1369 (Fed. Cir. 2003) ("Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference.").  Thus, Kandypens fails to meet its burden.

## 2.     Kandypens' Theory of "Inherent" Anticipation Fails.

To establish inherent anticipation, Kandypens must show the missing claim

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1   limitations are "necessarily" present in the Pepcom Prototypes.  *See Cont'l Can Co.*

2   *USA v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir 1991) ("[E]vidence must

3   make clear that the missing descriptive matter is necessarily present in the thing

4   described in the reference"); *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 640

5   Fed.Appx. 951, 957 (Fed. Cir. 2016) ("[T]here are strict requirements before a

6   finding of inherent anticipation is made. Indeed, inevitability is at the heart of

7   inherency."); *Diodem*, 2005 WL 6225366, at *16 (anticipation by inherency is

8   "appropriate only when the reference discloses prior art that <u>must necessarily</u>

9   <u>include</u> the <u>unstated limitation</u>.") (emphasis in original) (internal quotations

10  omitted).  However, here, Kandypens concedes the Peak device can be designed

11  with or without a removable atomizer.  (SGD 87.)  It is also undisputed that other

12  vaporizers operate without removable atomizers.  (SGD 88.)  Even Dr. Colwell

13  agrees that the atomizer of the Puffco Peak "certainly could be" made non-

14  removable.  (SGD 87.)  All of these undisputed facts show a removable atomizer

15  was not "necessarily present" in the Pepcom Prototypes, and therefore Kandypens

16  cannot prevail on its "anticipation by inherency" theory.

17      Kandypens' motion argues the missing claim limitations "at least probably,

18  exist for the Peak to operate." (Mot., 20:1-2.)  "Inherency, however, may not be

19  established merely by probabilities or possibilities." *Lacks Indus. v. McKechnie*

20  *Vehicle Components USA, Inc.*, 300 F. App'x 904, 907 (Fed. Cir. 2008); *see also*

21  *Diodem*, 2005 WL 6225336, at *21 (rejecting anticipation by inherency where the

22  evidence demonstrated that the allegedly inherently anticipating prior art may have

23  included a limitation of the asserted patent, finding that "such 'possibility' is wholly

24  insufficient to prove the claim anticipated by inherent disclosure").  Thus,

25  Kandypens fails to meet its burden of proving inherent anticipation by clear and

26  convincing evidence.

27          **3.    Kandypens Theory of "Implied" Anticipation Fails.**

28  Kandypens' final theory of anticipation, "implied anticipation," is not well

developed in the law, with the majority of courts subsuming it under either obviousness or inherency inquiries. *See, e.g., Ecolochem, Inc. v. Southern California Edison Co.*, 863 F. Supp. 1165 (C.D. Cal. 1994) (citing *Standard Havens Products, Inc. v. Gencor Indust., Inc.*, 953 F.2d 1360, 1369 (Fed. Cir. 1991) (focusing on inherent anticipation); *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1479 (Fed. Cir. 1986) (focusing on inherent anticipation and obviousness); *In re King*, 801 F.2d 1324, 1326 (Fed. Cir. 1986) (stating "anticipation can occur when the claimed limitation is 'inherent' <u>or otherwise implicit</u> in the relevant reference," but not differentiating between inherent and implicit in finding the prior art reference inherently anticipated the asserted patent); *c.f. Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 329 F.Supp.3d 1070 (N.D. Cal. 2018); *Move, Inc. v. Real Estate All. Ltd.*, 221 F.Supp.3d 1149 (C.D. Cal. 2016).

Regardless, a finding of implied anticipation is proper only where a prior art reference "discloses all the claimed limitations" either (1) "arranged or combined in the same way as in the claim" or (2) arranged or combined differently as in the claim, if a person of skill in the art, reading the reference, would "at once envisage" the claimed arrangement or combination." *Kennametal, Inc. v. Ingersoll Cutting Tool Co.*, 780 F.3d 1376, 1381 (Fed. Cir. 2015); *see also In re Preda*, 401 F.2d at 826; *Verinata Health*, 329 F.Supp.3d at 1088; *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1333-34 (Fed. Cir. 2016).

Here, Kandypens concedes none of the prior art references disclose all the claimed limitations of the '334 Patent.  (Section II.B.1, *supra*.)  Kandypens' cannot prevail on its implied anticipation theory for this reason alone.  But even if the prior art references had disclosed all claimed limitations, Kandypens still fails to show that a person of skill in the art, reading the references (a)-(e), would "at once envisage" the claimed arrangement or combination.  To the contrary, Kandypens claims Mr. Gibson is a person of skill in the art (Mot., 20, n. 5), but he admitted he had never seen this type of technology before, he needed to send it to a manufacturer

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

to "reverse engineer" it, and he asked them "how does the technology work?"  (SGD 59-61, 100.)  Thus, Kandypens fails to meet its burden to prove implied anticipation. At minimum this is a fact question more appropriate for the jury to decide.

Kandypens relies on the district court case of *ArcelorMittal France v. AK Steel Corp*., 811 F. Supp. 2d 960.  (Mot., at 19.) However, that decision was reversed when the Federal Circuit explicitly found that there was no anticipation on appeal.  *ArcelorMittal France v. AK Steel Corp* , 700 F.3d 1314, 1323 (Fed. Cir. 2012). Moreover, the Federal Circuit at no point used the term "implicit anticipation." In fact, the Federal Circuit expressly limited anticipation to instances where "each and every limitation is found either **expressly or inherently** in a single prior art reference," making no mention of the inferences of those having skill in the art.  *Id.,* at 1322 (emphasis added).  *Dayco Prod., Inc. v. Total Containment, Inc.,* 329 F.3d 1358, 1368 (Fed. Cir. 2003) also does not support a standalone "implicit anticipation" doctrine. Instead, the very language Kandypens cites is pulled from a discussion of inherent anticipation. *Id.*  The court went on to explain that in order to "serve as an anticipation when the reference is silent about the asserted inherent characteristic, such gap in the reference may be filled with recourse to extrinsic evidence[; however, s]uch evidence *must make clear that the missing descriptive matter is necessarily present in the thing described in the reference*." *Id.* at 1369 (emphasis added).  The Court thereafter concluded that there was no evidence that the missing element was necessarily present. In so doing, the Court held the question is whether the missing element is so inherent in a prior art reference that it is *necessarily present* in the prior art. *See id.* Thus, to whatever extent implicit disclosure exists, it still requires a finding that the disclosure necessarily included all elements that were not expressly disclosed.

Here, Kandypens cannot succeed under the implied anticipation theory because Kandypens lacks any evidence, let alone clear and convincing evidence, that the prior art references it relies upon disclose the claim limitation of a

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1  removable atomizer or that such an atomizer is necessarily present.  (SGD 85-93.)

2  ## C.  **Kandypens' Alternative Theory of Obviousness Fails.**

3  Kandypens' final invalidity theory is that the invention claimed in the '334

4  Patent was "obvious" at the time (January 2018) based on prior art.  (Section

5  III.B.iii.)  This fails for several reasons.

6  First, as a threshold matter, Kandypens' obviousness analysis only addresses

7  one missing claim element, the removably attachable atomizer.  (Mot., at 20:18-20.)

8  However, Kandypens failed to show evidence of additional claim elements in the

9  Pepcom Prototypes, including the Atomizer Air Flow Path Limitations.  (Section

10  II.A.1, *supra*.)  Kandypens' obviousness argument fails to address these additional

11  claim elements, and it is therefore defective for this reason alone.

12  Second, a determination of whether any particular claim is obvious is based

13  on several highly factual inquiries known as the "*Graham*" factors.  *Graham v. John*

14  *Deere Co.*, 383 U.S. 1, 17-18 (1966).  These include (1) the scope and content of the

15  prior art; (2) the differences between the claims and the prior art; (3) the level of

16  ordinary skill in the pertinent art; and (4) secondary considerations of non-

17  obviousness.  *Id.*   This has been the law for more than fifty years, and these "basic

18  factual inquiries" form "the 'background' for evaluating obviousness."  *Microsoft*

19  *Corp.*, 564 U.S. at 97.  After consideration of all facts, there must be clear and

20  convincing evidence that the patented invention would have been obvious at the

21  time to a person of ordinary skill.  *Id.*  Whether one of ordinary skill in the art would

22  have a motivation to combine pieces of prior art in the way claimed by the patent is

23  also a factual determination.  *Intercont'l Great Brands LLC v. Kellogg N Am. Co.*,

24  869 F.3d 1336, 1343 (Fed. Cir. 2017).

25  Here, Kandypens fails to address any of the *Graham* factors or show the

26  Court these factors demonstrate that a removably attachable atomizer with the

27  Atomizer Air Flow Path Limitations was obvious at the time.  (Mot., *generally*.)

28  Kandypens' failure to address the "basic factual inquiries" that form "the

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

'background' for evaluating obviousness" is by itself grounds for denying the motion.  However, Puffco addresses them here for the Court's benefit, as they clearly show the highly factual nature of the obviousness analysis and that Kandypens cannot prevail.

### 1.   The Scope and Content of the Prior Art.

"What the prior art teaches, whether a person of ordinary skill in the art would have been motivated to combine references, and whether a reference teaches away from the claimed invention are questions of fact." *Meiresonne v. Google, Inc.,* 849 F.3d 1379, 1382 (Fed. Cir. 2017) (citation omitted); *Riverwood Int'l Corp. v. Mead Corp.*, 212 F.3d 1365, 1366 (Fed. Cir. 2000) (same).

Here, Kandypens' motion fails to identify the specific prior art that allegedly rendered the claimed invention obvious at the time.  (Mot., at 20-21.)  Kandypens' SUF also does not identify any such prior art.  (Kandypens' SUF, *generally*.) Kandypens' failure to identify the alleged prior art in the motion and SUF is grounds for denying the motion.

The Gibson declaration mentions "obviousness" in only two paragraphs, neither of which identify the alleged prior art.  (Doc. 129, ¶¶ 45, 47.)  In other parts of his declaration, he vaguely refers to the "KandyPens Icon" and the "Greenlightvapes G9 510 Nail."  (*Id.*, ¶ 15.)  Neither device is before the Court and therefore Puffco and this Court have no basis to determine the scope and content of these alleged prior art references.  Kandypens likewise offers no analysis of the scope and content of these alleged prior art references, and therefore fails to meet its burden.  Further, Kandypens cannot rely on Mr. Gibson for analyzing the scope and content of these two alleged prior art devices or asserting they render the claimed invention obvious.  Mr. Gibson testified he is not familiar with the Greenlightvapes G9 510 Nail product.  (SGD 95.)  Further, after viewing a picture of it he testified it was the same as other products, including the Kandypens Icon, that have a removable cup, but he does not know if they have a removable atomizer.  (*Id.*)

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

Mr. Gibson's declaration also states in conclusory fashion that "the overwhelming majority of portable electronic vaporizers have removable atomizers." (Doc. 129, ¶ 14.) Kandypens fails to identify any such unnamed vaporizers, let alone introduce evidence on them, and therefore Puffco and this Court have no basis to determine the scope and content of this unidentified purported prior art. Mr. Gibson can only identify two such devices, as shown above. Further, he testified that other vaporizers operate without removable atomizers. (SGD 88.) Puffco likewise put forth evidence of vaporizers without removable atomizers. (*Id*.) Mr. Gibson also testified he had never seen the Peak's atomizer technology before late 2018. (SGD 100.)

### 2. The Differences Between the Claims and the Prior Art.

It is undisputed that none of the prior art references (a)-(e), nor the Greenlightvapes G9 510 Nail and Kandypens Icon, disclose a removable atomizer having the Atomizer Air Flow Path Limitations. (SGD 83, 85-95.)

Both the Greenlightvapes G9 510 Nail and the Kandypens Icon devices described in the documents provided by Kandypens lack a removable atomizer, but instead appear to include a replaceable ceramic heating rod and a removable cup. (SGD 96.) Neither product includes an airpath from an atomizer, through a base, to a mouthpiece but instead has an airpath upward from the cup to the mouthpiece to the user. (SGD 97.) As such, these products both teach away from the type of atomizer claimed in the '334 Patent. *In re Gordon*, 733 F.2d 900, 902 (Fed. Cir. 1984) (prior art reference taught away from turning its design upside down (as needed to arrive at claimed design) because that would render it "inoperable for its intended purpose.").

Based on his experience and expertise as a designer of portable electronic vaporizers, Mr. Bajpai will testify at trial that it would not be obvious to combine the prototype Peak device with either the Greenlightvapes G9 510 Nail product or the Kandypens Icon product to arrive at any of the claims of the '334 Patent. (SGD

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

PUFF CORPORATION'S OPPOSITION TO KANDYPENS, INC.'S MOTION FOR SUMMARY JUDGMENT

98.)  In fact, if it was obvious to combine the Kandypens Icon device with what was shown in the Pepcom Prototypes, there would be no reason for Kandypens to instruct its overseas manufacturer to "copy" and "reverse engineer" the Puffco Peak to arrive at the infringing Kandypens Oura device.  (SGD 59-60.)

### 3.      The Level of Skill in the Pertinent Art.

Puffco is the only party that presented any evidence on the hypothetical person of ordinary skill in the art ("POSITA").  (SGD 20.)  Kandypens criticized Puffco's evidence, but did not say whether it agrees with Puffco's proposal for the characterization of a POSITA, or present any alternative definition of a POSITA, or address why Mr. Meyst's opinions in this case would differ or be unreliable if there was a different characterization of a POSITA.  (Mot., *generally*.)  Kandypens also did not present evidence that its purported technical expert, Mr. Gibson, met *any* definition of a POSITA.

After reviewing the '334 Patent, its file history, both the Peak and Oura products, certain prior art identified by Kandypens, and transcripts of depositions of a number of witnesses, Mr. Meyst stated:

> It is my opinion that a person of ordinary skill in the art at the time of the inventions of the '334 Patent would have at least an associate's degree in engineering or physics or the equivalent, and at least five years of experience with vaporizing devices.  Alternatively, more education, such as a Bachelor of Science degree in Mechanical Engineering, Electrical Engineering or Industrial Design or related fields could reduce the number of years of experience to at least one to three years of experience.

(Meyst Rep., ¶ 18.)  Kandypens' proffered technical expert, Mr. Gibson, received a degree in biology, not engineering.  (SGD 57.)  He took no coursework related to designing atomizers.  (SGD 99.)  He testified that he had never seen such an atomizer prior to the launch of the commercially-available Puffco Peak device.  (SGD 100.)  He needed to ask the manufacturer how the technology works.  (SGD 61.)  Thus, Mr. Gibson is not a POSITA.

### 4.      Objective Indicia of Non-obviousness.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

In an obviousness inquiry, evidence of objective indicia of nonobviousness must be considered if present. *See Pentec, Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 315 (Fed. Cir. 1985).  Objective indicia, or secondary considerations, of non-obviousness can be the "most probative and cogent evidence of non-obviousness." *Stratoflex Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1982).  Full analysis of secondary considerations "help inoculate the obviousness analysis against hindsight." *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1378 (Fed. Cir. 2012).  It is legal error to reach a conclusion of obviousness until all secondary consideration factors are fully considered. *Apple Inc. v. Samsung Electronics Co.*, 839 F.3d 1034, 1048 (Fed. Cir. 2016).

Analysis of the objective indicia of nonobviousness factors is particularly important here where Kandypens uses hindsight bias by using the inventors' teachings as a template in attempting to claim the invention was obvious at the time. Kandypens argues "Puffco's own development process shows that a nearly-final design for a removably attachable atomizer can be achieved within months of beginning development."  (Mot., at 21:23-25.)  The Federal Circuit has cautioned that "[t]he inventor's own path itself never leads to a conclusion of obviousness; that is hindsight." *Otsuka Pharm. Co. v. Sandoz, Inc.*, 678 F.3d 1280, 1296 (Fed. Cir. 2012); *see also, Mintz*, 679 F.3d at 1378 (vacating summary judgment of obviousness in view of danger of hindsight and importance of considering objective evidence to combat it).

> a. <u>Long-felt, but Unresolved Need.</u>

Prior to Puffco's development of the Peak, consumers of vaporizable concentrate cannabis held a long-felt need for a device that would replicate the dabbing experience without the stigma or danger of a blowtorch.  (SGD 11-12, 101.)

> b. <u>Copying by others.</u>

"[E]vidence of copying tends to show nonobviousness." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1336 (Fed. Cir. 2016) ("The fact that a competitor

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

copied technology suggests it would not have been obvious.").  Here, since the introduction of the Puffco Peak device in early 2018, there have been a number of products that have copied the design of the Peak, including the Kandypens Oura. (SGD 59-60, 102.)  Mr. Gibson testified many of the devices are "knock-offs" of the Peak.  (SGD 102.)

c. <u>The Patented Invention is Commercially Successful.</u>

"When a patentee can demonstrate commercial success, usually shown by significant sales in a relevant market, and that the successful product is the invention disclosed and claimed in the patent, it is presumed that the commercial success is due to the patented invention." *J.T. Eaton & Co. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997); *WBIP*, 829 F.3d at 1329.  Market share data, though potentially useful, is not required to show commercial success. *See Tec Air, Inc. v. Denso Mfg. Mich. Inc.*, 192 F.3d 1353, 1360–61 (Fed. Cir. 1999).

Here, the Puffco Peak device is covered by the asserted claims of the '344 Patent.  (SGD 81.)  It has been a tremendous commercial success.  (SGD 103.) Since its introduction in February 2018, Puffco has sold more than 620,000 Peak vaporizers, generating more than $150 million in revenue.  (*Id*.)  The accused Oura device is also covered by the patented invention, and Kandypens' CEO testified the Oura device was a successful product for his company.  (SGD 80, 104.)

d. <u>Industry Praise.</u>

Since its introduction, the Puffco Peak has received widespread consumer and industry praise and acclaim.  (SGD 46, 50, 51, 105.)  As one industry magazine summarized it: "Like most industries, true innovation in the device arena occurs rarely, creating a domino effect of knockoffs in varying degrees of quality. The Peak is the perfect example of a lightning rod invention that changed the world of concentrates, and launched a thousand look-alikes in the process."  (SGD 105.)

e. <u>There is a Sufficient Nexus between the Patented<br/>Invention and the Puffco Peak.</u>

BRYAN CAVE LEIGHTON PAISNER LLP<br/>120 BROADWAY, SUITE 300<br/>SANTA MONICA, CA  90401-2386

1    The patent owner is entitled to a presumption of nexus if evidence of

2    secondary considerations is "tied to a specific product" that embodies and is

3    "coextensive" with the claimed invention.  *Fox Factory Inc. v. SRAM LLC*, 944 F.3d

4    1366, 1373 (Fed. Cir. 2019).  Here, both parties assert the Puffco Peak device is

5    covered by all of the asserted claims of the '334 Patent.  (SGD 81.)

6         **5.     Consideration of All Factors Demonstrates the Non-**

7              **Obviousness of the Claims of the '344 Patent.**

8    As shown above, full consideration of each of the *Graham* factors shows

9    Kandypens cannot meet its high burden of demonstrating the asserted claims of the

10   '334 Patent are obvious.  Kandypens appears to argue that old-style vaporizers

11   having a metallic housing for holding a heating element and a container for holding

12   a vaporizable product could be combined with the disclosure of the Pepcom

13   Prototypes to arrive at the claimed invention.  Kandypens' sole support for making

14   this argument is the declaration of Mr. Gibson.  However, Mr. Gibson has never

15   designed a portable, electronic vaporizer or any component thereof, such as an

16   atomizer. (SGD 106.)  As explained by Puffco's lead engineer, such a combination

17   would be anything but obvious.  (SGD 107.)  Each of these old-style housings was

18   used in a vaporizer device having a gas flow path that easily traveled <u>upward</u> from

19   the housing directly into a glass mouthpiece. (*Id*.)  The Patent Office was aware of

20   the existence of removable atomizers for use with portable electronic vaporizers.

21   (SGD 108.)  By contrast, the new invention claimed in the '334 Patent includes a

22   novel atomizer that allowed, for the first time, the atomizer to be separately

23   removable from the removable mouthpiece, and which required an atomizer

24   technology that had never existed before, specifically a novel atomizer designed to

25   permit the gas to flow from the container of the atomizer, through the atomizer

26   housing, <u>downward</u> to the "bottom" of the atomizer, into the base and onto the glass

27   mouthpiece.  (SGD 107.)  Mr. Gibson admitted he had never seen such a device

28   before Kandypens decided to copy it.  (SGD 4.)  As the above analysis shows, it is

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1    clear Kandypens lacks evidence to meet its burden on obviousness.

2    **III.    THE COURT SHOULD DENY SUMMARY JUDGMENT FOR**

3    **KANDYPENS ON INFRINGEMENT**

4        Kandypens and Puffco each moved for summary judgment on Puffco's

5    infringement claim.  (Mot., at 22-23.)  The sole issue is whether the accused Oura

6    device contains the claim element of "second container outlets" as used in the claim

7    phrase "one or more second container outlets capable of flowing the gas having the

8    vaporizable product entrained therein into atomizer internal flow path."  (*Id*.)  The

9    Court should grant Puffco's motion and deny Kandypens' motion for two reasons.

10       First, there is no genuine dispute of fact that the accused Oura device has

11   "second container outlets."  The Court construed "second container outlets" to

12   mean "apertures or openings through which gas leaves the container, and that are

13   separate from the first container inlet and may be separate from the body of the

14   container." (Doc. 76, at 7.)  Puffco's expert, Mr. Meyst, analyzed the Oura device

15   and compared it to the claims of the '334 Patent, and determined it has second

16   container outlets as described in the '334 Patent and which meet the Court's

17   construction of the term "second container outlets." (SGD 80.)  Mr. Meyst

18   determined the Oura's openings "are designed exactly as described in one

19   embodiment of the '334 Patent." (*Id*.) Mr. Gibson likewise testified the Oura's

20   atomizer has openings that meet the Court's construction (which he refers to as the

21   four "slits"). (SGD 80.)  Kandypens' expert, Dr. Colwell, confirmed the same

22   underlying facts.  When Dr. Colwell was asked at his deposition if the Oura

23   atomizer has openings "capable of flowing the gas having the vaporizable product

24   entrained therein into the atomizer internal flow path" (the exact language in claim

25   1 of the '334 Patent), he conceded it does.  (SGD 80.)  He also provided a diagram

26   of the Oura gas flow path (Figure 6 in his report) that shows an identical gas flow

27   path and outlets as Figure 6B of the '334 Patent.  (*Id*.)

28       Kandypens hired Dr. Colwell to offer the strained opinion that the Oura does

24

not have second container outlets because the gas has "already left" the container by the time it flows through the outlets.  This ignores the second clause of the Court's construction that specifically anticipates the "second container outlets" may be "separate from the body of the container."  It also ignores the specification of the '334 Patent.  (SGD 80, 110.) The specification describes an embodiment where the one or more second container outlets are formed **between** the top surface of the container and a bottom surface of an inner annular ring disposed above the container.  (SGD 110.)  Similarly, claim 9, which depends from claim 1, specifically allows the second container outlets to be formed "between a top surface of the container and an annular ring disposed above the container" (SGD 111), and therefore the outlets necessarily may be located above the plane extending across the top surface of the container.  *Baxalta Inc. v. Genetech, Inc.*, 972 F.3d 1341, 1345-46 (Fed. Cir. 2020) (a dependent claim must by definition include all limitations of all claims from which it depends, which necessarily means that the independent claim must be construed broadly enough to permit what is recited in its dependent claim.).  This is precisely the embodiment implemented by Kandypens in its Oura device and shown in Dr. Colwell's Figure 6.  Mr. Meyst, Mr. Gibson, and Dr. Colwell all agree the Oura has such openings.  (SGD 80.)  When Puffco asked Dr. Colwell to explain his opinion in light of it conflicting with the '334 Patent's specification and drawings, Dr. Colwell conceded he did not review the '334 Patent. (SGD 80.)

Second, the foregoing, at minimum, precludes summary judgment for Kandypens.  (SGD 80, 110, 111.)

## IV.   CONCLUSION

For the reasons set forth above, Puffco respectfully requests the Court deny Kandypens' motion for summary judgment and grant Puffco's motion.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1

2

Dated:  September 8, 2021

**BRYAN CAVE LEIGHTON PAISNER LLP**

3

By: _Colin D. Dailey_

4

Colin D. Dailey

5

Attorneys for Defendant and Counterclaimant
Puff Corp.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

603566685

26