Eric B. Hull (# 291167)
ebh@kfcfirm.com
KERCSMAR FELTUS & COLLINS PLLC
8200 Wilshire Boulevard, Suite 222
Beverly Hills, California 90211
Telephone: (310) 928-7885
Facsimile: (480) 421-1002

Sean J. O'Hara *(Admitted Pro Hac Vice)*
sjo@kfcfirm.com
KERCSMAR FELTUS & COLLINS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
Telephone: (480) 421-1001
Facsimile: (480) 421-1002

*Attorneys for KandyPens Inc.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kandypens, Inc., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>Puff Corp., a Delaware corporation,<br><br>Defendant.<br><br>Puff Corp., a Delaware corporation,<br><br>Counterclaimant,<br><br>v.<br><br>Kandypens, Inc., a Delaware corporation,<br><br>Counterdefendant. | Case No. 2:20-cv-00358-GW-KS<br><br>**KANDYPENS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY FROM EXPERT RICHARD MEYST AND MEMORANDUM IN SUPPORT**<br><br>District Judge: George H. Wu<br>Date: October 7, 2021<br>Time: 8:30 a.m.<br>Place: Courtroom 9D, Ninth Floor<br>350 West 1st Street<br>Los Angeles, CA 90012<br>Action Filed: January 13, 2020<br>Trial Date: December 14, 2021 |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................2

II. ARGUMENT .......................................................................................................2

    A. Meyst's Opinions Are Conclusory ...........................................................2

    B. Meyst's Opinion Regarding "Second Container Outlets" Ignores the Court's Construction and Lacks a Sufficient Factual Foundation .........6

    C. Meyst Improperly Compares the Oura to the Peak and the Specification Rather than the Claims ......................................................9

    D. Meyst Invades the Province of the Jury ..................................................9

    E. Meyst's Opinions Regarding a POSITA Are Unreliable ......................10

III. CONCLUSION .................................................................................................12

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                             **Page(s)**

*EcoServices, LLC v. Certified Aviation Servs., LLC,*
   312 F. Supp. 3d 830 (C.D. Cal. 2018)............................................................9
*Junker v. Med. Components, Inc.,*
   2019 WL 109385 (E.D. Pa. Jan. 4, 2019).....................................................5, 6
*Sundance, Inc. v. DeMonte Fabricating Ltd.,*
   550 F.3d 1356 (Fed. Cir. 2008)...................................................................10

## I. INTRODUCTION

In the Motion, Plaintiff and Counterdefendant KandyPens, Inc. ("KandyPens") made the case that Richard Meyst issued opinions that are conclusory and untethered from the facts and this Court's claim construction. In addition, in several areas Meyst opined on the facts themselves rather than offering opinions based on them. KandyPens established that Meyst's opinions are unreliable and should be excluded from the case. Puffco responds largely with explanations that Meyst is smart and his Report is lengthy. That explanation does not remedy the unreliability identified in the Motion.

These issues are most striking in evaluating Meyst's opinion regarding the alleged "second container outlets." When challenged on his opinion at his deposition, Meyst simply declared, "I see what he says. I think it's clear in my report that I say that the Kandypens product does have second container outlets." (Dkt. #124-2, Ex. B, R. Meyst Dep. (7/20/21) at 75:8-15.) When asked why he reached that conclusion, he curtly answered: "Because it does." (*Id*.) This kind of conclusory declaration—literally based on the *ipse dixit* of the expert—has no place in front of a jury.

Meyst and Puffco claim "there is nothing wrong with" conducting an analysis proscribed by law or engaging in his own effort to redo the Court's claim constructions. But at least since *Daubert*, Meyst and Puffco are mistaken. Meyst's opinions on the subjects outlined in the Motion are unreliable and should be excluded from the case.

## II. ARGUMENT

### A. Meyst's Opinions Are Conclusory.

Puffco accuses KandyPens of ignoring Meyst's Report, highlighting the "167 separate paragraphs of analysis and opinions regarding the accused Oura device, the subject patent, and infringement, among other things." (Dkt. #135, Puff Corp.'s

Opp'n to KandyPens, Inc.'s Mot. to Exclude Meyst ("Puffco's Opp'n") at 6:5-8.) Puffco's focus on length rather than substance is telling. While the Meyst Report includes 167 paragraphs, it certainly does not contain that many "paragraphs of analysis and opinions." Of that 167 paragraphs, three are introductory, nine relate to Meyst's background and compensation, fourteen relate to his understanding of the relevant law, five explain the factual sources he considered, ten simply describe the '334 Patent (while making surface-level comparisons of the Oura and Peak), two describe the Court's constructions, and four are merely conclusions of what he has done (a total of 43 paragraphs).

Meyst further writes:

> Based on Kandypens' non-infringement contentions and the testimony of its corporate representative, I understand that Kandypens admits that its Oura product meets most of the claim limitations of claim 1 and only challenges whether the Oura has the required "second container outlets." . . . My analysis below therefore focuses on this limitation but for completeness I offer my opinion on all claim limitations in the Asserted Claims.

(Dkt. #124-2, Ex. A, Meyst Report ¶ 55.) These superfluous paragraphs included in the name of "completeness" account for another 74 paragraphs. Apparently keen on covering all possible bases, Meyst also addresses an argument regarding "gas flow" that accounts for 21 paragraphs. So in total, 138 of the 167 paragraphs of the Meyst Report are not valuable to this Court or the jury at all.

Meyst's actual infringement analysis begins with the following illuminating paragraphs:

> 44. I understand that Puffco introduced its Peak vaporizer product to the marketplace in 2019.

> 45. I understand that Kandypens sent one of the newly introduced Peak vaporizer products to its manufacturer in China to copy, design, develop and manufacture the Oura device.

> 46. Puffco has accused the Kandypens' Oura vaporizer of infringing the '344 Patent.

(Dkt. #124-2, Ex. A, Meyst Report ¶¶ 44-46.) Then, before addressing any claims under the '344 Patent, Meyst spends six paragraphs opining that the Oura copied the Peak (which, as discussed below, is a question for the jury).

Meyst then baldly declares "It is my opinion that the Kandypens' Oura product meets all of the elements of, and, therefore, infringes at least claims 1-11 and 13 of the '344 patent." (*Id.*, ¶ 53.) After stating this conclusion, he backfills: "My opinion is based on my review of the '344 patent, its file history, the Court's Markman Order, my inspection and operation of the Oura device, a transcript of the deposition of Kandypens' corporate representative, Mr. Graham Gibson, and the filings and discovery produced in this case." (*Id.*, ¶ 54.)

It is hard to see this statement as anything but conclusory given what preceded it. Thirty paragraphs later, Meyst addresses the alleged "second container outlets." Even though he quotes the Court's construction (*Id.*, ¶ 86), he does not address that construction *at all* in his analysis. Instead, he cites various aspects of the Oura's configuration before baldly declaring, "The second container outlets of the Oura are designed exactly as described in one embodiment of the '334 Patent . . . ." (*Id.*, ¶ 89.) But he notably skips whether those alleged "outlets" meet the Court's construction of the term "second container outlets"—a shortcoming addressed in the next section.

Puffco cites the length of the Meyst Report in an attempt to draw the Court's attention away Meyst's deposition. But even if the Meyst Report were not conclusory—and it is—Meyst's deposition cannot be ignored. The reason is simple: At his deposition, Meyst admitted that he wrote the Meyst Report with counsel. He testified: "So after digesting the information that was provided, I generated a draft of my report, shared that with counsel, ***and then they took the draft and added to it***. We went back and forth and I ***participated*** in generating subsequent drafts and

4

finalized it and this is the report." (Dkt. #128-8, Ex. F, Meyst Dep. (7/20/21) at 29:25-30:16 (emphasis added).)

And that deposition provided ample examples of bald conclusions from Meyst. When asked to differentiate his opinion on "second container outlets" from Dr. Colwell's opinion, he testified, "I see what he says. I think it's clear in my report that I say that the Kandypens product does have second container outlets." (Dkt. #124-2, Ex. B, Meyst Dep. (7/20/21) at 75:8-20.) When asked why he reached that conclusion, he curtly answered: "Because it does." (*Id*.) Later, when further pressed, he declared, "Well, this is my opinion. . . . And I believe this is a fact of how the thing operates." (*Id*. at 81:1-19.) In other words, he issued bald conclusions.

On his Person of Ordinary Skill in the Art ("POSITA") opinion, he simply stated:

> Well, I looked at the -- the general technology. I looked at the patents. I looked at the products and this is based on my general feeling that this is not someone who is a super expert. A person of skill in the art, ordinary skill in the art is someone who might work in industry on this kind of a product.

(*Id*. at 34:5-13.)

Puffco also takes umbrage with KandyPens' argument that Meyst conducted no experiments. But the "experiment" Puffco cites is nothing more than Meyst turning on the machines and making sure they operate: "Well, like I said, I followed the – the Quick Start guides just to learn how they operated. I charged them up. Put water in them. Pulled some air through it. Did not have anything to vaporize in it." (Dkt. #128-8, Ex. F, Meyst Dep. (7/20/21) at 32:23-33:7; *see also id*. at 31:13-32:24.) Everyone agrees that Myest conducted no experiments on the issue that matters: the presence of second container outlets.

And Puffco does not bother to address the fact that Meyst's testimony was rejected by a district court for lacking explanation in *Junker v. Med. Components,*

*Inc.*, No. CV 13-4606, 2019 WL 109385, at *7 (E.D. Pa. Jan. 4, 2019). There, Meyst baldly concluded that Plaintiff's invention had "a curved line representing a scallop." *Id*. That court granted summary judgment over Meyst's conclusory opinion. *Id*. at *8.

The pattern should continue here—the Court should exclude Meyst's opinions as conclusory.

### B. Meyst's Opinion Regarding "Second Container Outlets" Ignores the Court's Construction and Lacks a Sufficient Factual Foundation.

The Court ruled that "second container outlets" means "apertures or openings ***through which gas leaves the container***, and that are separate from the first container inlet and may be separate from the body of the container." (Dkt. #76, Claim Construction Ruling at 8 (emphasis added).) At no point in his report did Meyst directly opine that the Oura contains "second container outlets" as the Court defined that term. Instead, Puffco points to paragraphs where Meyst discussed "unique gas flow path" and in numerous places identifies what he thinks are "second container outlets." But, despite Puffco's protests to the contrary, he admitted that the gas had left the container before entering these alleged "outlets."

Puffco insists, "Mr. Meyst never admitted that the second container outlets in the Oura device do not meet the Court's claim construction." (Dkt. #135, Puffco's Opp'n at 13:13-14.) While he did not use those words, he repeatedly admitted that the gas had left the container before entering the disputed outlets—meaning the disputed outlets could not possibly meet the Court's claim construction. And, contrary to Puffco's argument, KandyPens did not "cherry pick[] an answer to one of a host of questions . . . ." (*Id*. at 13:4-7.)

Meyst made this concession repeatedly. At his deposition, Meyst tried to toe the company line, testifying, "The gas is leaving the container through the outlet." (Dkt. 124-2, Ex. B, Meyst Dep. (7/20/21) at 86:2-7.) But he prefaced that answer by

stating "there is no demarcation here [at the top of the container]." (*Id*.) When asked why the demarcation made a difference, he freely admitted, "Okay. [The gas] is outside the container." (*Id*. at 86:8-12.) When counsel drew a box above the container near the alleged "second container outlets," Meyst agreed the gas in the drawn box "has left the container." (Dkt. #128-8, Ex. F, Meyst Dep. (7/20/21) at 89:6-17.) Counsel asked Meyst again to explain this position in the following exchange:

> Q. That -- if we go back to 109, though, we agree that the box labeled one, that's totally out of the container; right?
>
> A. Box labeled one?
>
> Q. Yeah.
>
> A. It's sitting at the entrance to the container.
>
> **Q. But it is totally out of the container; right?**
>
> **A. Yeah.**

(Dkt. #124-2, Ex. B, Meyst Dep. (7/20/21) at 100:8-17 (emphasis added).)

Under the Court's claim construction, the term "second container outlets" requires that the outlets are "apertures or openings through which gas leaves the container . . . ." (Dkt. #76, Claim Construction Ruling at 8.) While the construction includes other clauses, the conjunctive "and" makes it clear that in order to meet the construction, the outlets must be the outlets "through which gas leaves the container."

As it does in several recent filings, Puffco highlights the final, permissive clause stating the outlet "may be separate from the body of the container." Puffco insists that this permissive clause allows for outlets other than those "through which gas leaves the container." It asks, "how can 'second container outlets' not be allowed to be above the top plane of the container when the construction

7

specifically allows the 'second container outlets' to be separate from the container?" (Dkt. #135, Puffco's Opp'n at 15:11-18.)

While Puffco clearly meant for its question to be rhetorical, it's easily answered. First of all, there is nothing about "may be separate from the body of the container" that necessarily includes outlets "above the top plane of the container." Second, KandyPens has already presented embodiments that incorporate all clauses of the construction. As KandyPens' Claim Construction Brief explained, "KandyPens' ***construction encompasses apertures not defined by the container walls*** (wholly or in part), but the apertures ***must be in a surface (or surfaces) that define the void of the container itself***. (Dkt. #69 at 8:2-6 (emphasis added).) It further explained, "Here, the important concept is that the 'outlets' actually be outlets of the void defined by the container." (*Id*. at 9:18-19.) KandyPens included numerous drawings providing examples of configurations that would meet this construction. (*Id*. at 8-9.)

Based on this explanation, KandyPens proposed almost the exact construction that the Court ultimately accepted: "[T]he Court may wish to modify KandyPens' and Puffco's proposals to clarify that the 'second container outlets'/'second container gas outlets' are 'one or more apertures through which gas exits the container, that are separate from the first container inlet.'" (*Id*. at 9:18-24 (emphasis in original).)

In other words, KandyPens previously answered Puffco's rhetorical question and the Court used that answer, in part, to form the construction of the term "second container outlets." Meyst's decision to avoid this construction renders his opinion unreliable and irrelevant—and the Court should exclude it.

### C. Meyst Improperly Compares the Oura to the Peak and the Specification Rather than the Claims.

In its Opposition, Puffco argues that Meyst compared the Oura to the '344 Patent and insists, "It is true that Mr. Meyst also compared the accused Oura device to the Peak device, ***but there is nothing wrong with doing that*** in addition to the more expansive and detailed comparison of the Oura to the '334 Patent." (Dkt. #135, Puffco's Opp'n at 8:6-8 (emphasis added).) The law says otherwise. "Case law specifically prohibits infringement determinations on the basis of comparing the accused product to a patentee's commercial embodiment of the claimed invention." *EcoServices, LLC v. Certified Aviation Servs., LLC*, 312 F. Supp. 3d 830, 839 n.7 (C.D. Cal. 2018). And Puffco failed to distinguish any of the case law KandyPens cited in its Motion demonstrating that point.

The Meyst Report and Meyst's testimony at his deposition make it clear that he extensively relied on a comparison of the Oura to the Peak, and the Oura to the specification. Indeed, the central thrust of Puffco's and Meyst's infringement argument is: (1) the Oura is a copy of the Peak, which practices the invention; (2) the Oura's atomizer is similar to a figure in the specification; therefore (3) the Oura infringes the '334 Patent. As noted in prior briefing, this analysis has been roundly rejected by the Federal Circuit as reversible error. It is beyond unreliable, it's unhelpful because it contradicts controlling law. This central part of his analysis cannot be excised from his conclusions, and he should not be allowed to pretend like he only conducted an appropriate comparison of the Oura to the patent claims. Accordingly, like in *EcoServices*, the Court should exclude the expert's opinion on the ground that the expert's reliance on the commercial embodiment was unreliable and misleading to a jury. *Id*. at 839.

### D. Meyst Invades the Province of the Jury.

Meyst opines on numerous factual issues. Without any case law in support, Puffco declares, "The jury will see this evidence and can make their own judgment,

but there is nothing wrong with Mr. Meyst expressing his opinion based on these uncontested facts and discovery emails." (Dkt. #135, Puffco's Opp'n at 18:11-13.) The problem is not that Meyst is *basing* opinions on facts—it is that he is opining *on the facts themselves*. On the alleged copying, he testified regarding his thoughts on what the evidence meant and opined: "Well, one example would be when I have the two atomizers in my hand, unless I look at the details, they are almost identical." (Dkt. #124-2, Ex. B, Meyst Dep. (7/20/21) at 116:8-15.) Regarding second container outlets, Meyst testified that because Gibson called openings "slits," it somehow means his opinion on "second container outlets" is correct. (*See id*. at 92:2-96:11.) And at the conclusion of his deposition, Meyst conceded that the jury did not need his expert opinion to make its determination regarding the second container outlets. (*Id*. at 122:12-123:5.)

In so testifying, Meyst clarified that he is not basing his opinions on facts, he is opining regarding the meaning of the facts. "The court, in its role as gatekeeper, must exclude expert testimony . . . which invades the province of the jury to find facts and that of the court to make ultimate legal conclusions." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1364 (Fed. Cir. 2008). The Court should exclude Meyst's opinions that invade the province of the jury.

E. **Meyst's Opinions Regarding a POSITA Are Unreliable.**

Puffco's Opposition makes it clear that Meyst's opinion on a POSITA are baseless, arguing: "Mr. Meyst's opinion regarding the POSITA is standard for a patent case involving mechanical technologies . . . ." (Dkt. #135 at 19:5-8.) Meyst's testimony certainly made it clear he had given the issue no thought. He admitted: "Well, my knowledge is limited, but I understand that the gentleman at Puffco, which is who I have at least been aware of, he was -- had a design or bachelor's degree, I believe, in industrial design and has been working in the field for a number of years." (Dkt. #124-2, Ex. B, Meyst Dep. (7/20/21) at 40:3-16.) As

Puffco concedes, Meyst could not remember the man's name. (*Id*.) He did not know the experience level of either Bajpai (the man in question) or the education level of Puffco's founder Roger Voldarsky. (*Id*. at 54:1-12; 43:23-44:21.)

Puffco does not address any of these deficiencies. Instead, Puffco deflects, arguing:

> In fact, Kandypens challenges this definition of a POSITA for one reason – because the only technical expert offered by Kandypens on invalidity (Graham Gibson) admitted he lacks an engineering degree or any experience designing atomizers for vaporizers and, therefore, he is not a POSITA and is unable to offer any reliable opinions on invalidity.

(Dkt. #135, Puffco's Opp'n at 19:13-17.)

The issue is the exact opposite—Meyst's opinions (expressed in a report co-written with counsel) are specifically designed to exclude Gibson. Meyst testified that Puffco's founder Roger Volodarsky "has knowledge above and beyond an ordinary skill" and that "[i]nventors have something more than persons of ordinary skill . . . ." (Dkt. #124-2, Ex. B, Meyst Dep. (7/20/21) at 43:20-44:24.) Yet, Voldarsky's own education is minimal. When asked to explain his own education beyond high school, he answered, "Honestly, it's a little bit shaky. The memories there are shaky. I did go to college at some point. I don't know if it was immediately after or if I waited. Yeah, I don't remember exactly." (Dkt. #128-2, Ex. A, May 12, 2021 Volodarksy Dep. at 9:20-10:1.) In other words, Voldarsky has less education in the pertinent art than Gibson—yet Meyst still declared him someone with "knowledge above and beyond an ordinary skill." (Dkt. #124-2, Ex. B, Meyst Dep. (7/20/21) at 44:17-21.) In other briefing, Puffco has suggested that the Court should ignore this testimony because Meyst was just offering unfounded speculation (*e.g.*, Dkt. #139-6 at 9-10), which seems to be nothing less than a concession that Meyst will offer unreliable testimony on any topic he feels like, and it's up to the Court to catch him. Put differently, Puffco agrees that just because

Meyst says something, that doesn't mean he actually knows what he's talking about.

Similarly, Puffco ignores the fact that Meyst could not explain why he provided a different definition of a POSITA in this case than he had as an expert for an e-cigarette case several years prior: "Well, I think it's an opinion that you develop and it may change over time. It's not an absolute, so this is an approximation of what would be required and very -- very well the same person could look at the same information and come up with a different result." (*Id*. at 61:6-15.) In fact, on the differences in his opinion, he conceded, "I hadn't thought about it." (*Id*. at 62:20-63:6.)

At bottom, it becomes clear that Meyst has not conducted any analysis of POSITA. He has simply set an arbitrary standard to exclude Gibson from his definition. *Daubert* prevents such game-playing and the opinion should be excluded.

### III. CONCLUSION

Puffco points to Meyst's qualifications and the length of his Report. But those factors simply do not excuse the fact that on his infringement opinions, Meyst relies on his own say so. He relied on inferences and assumptions he made—conclusions only a jury could reach. And he relied on limited information to the exclusion of information he deemed inconvenient.

The Court should exclude Meyst's opinions regarding second container outlets, direct copying, and POSITA.

DATED this 23rd day of September 2021,

KERCSMAR FELTUS & COLLINS PLLC

By: *s/ Sean J. O'Hara*
    Sean J. O'Hara
    7150 East Camelback, Suite 285
    Phoenix, Arizona 85251

    Eric B. Hull
    100 Wilshire Boulevard, Seventh Floor
    Santa Monica, California 90401